STATE OF NEBRASKA, APPELLEE, V. MATTHEW C. CAMPBELL, APPELLANT.

473 N.W.2d 420

Filed August 30, 1991.    No. 90-392.

Richard B. Register for appellant.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

On December 19, 1989, a four-count information was filed in the Douglas County District Court, charging defendant, Matthew C. Campbell, with (1) first degree sexual assault on a child, in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1989); (2) burglary, in violation of Neb. Rev. Stat. § 28-507 (Reissue 1989); (3) robbery, in violation of Neb. Rev. Stat. § 28-324 (Reissue 1989); and (4) theft by unlawful taking, in violation of Neb. Rev. Stat. § 28-511 (Reissue 1989). Defendant was tried before a jury on February 14 and 15, 1990. Count IV, theft by unlawful taking, was dismissed by order of

the court before the case was submitted to the jury. The jury returned guilty verdicts on the other three counts. Defendant's motion for a new trial was denied. After a sentencing hearing, defendant was sentenced to the Nebraska Department of Correctional Services. He was sentenced to 2 years for first degree sexual assault on a child, with credit for time served; 2 years for burglary, to run concurrently with the sentence for sexual assault, with credit for time served; and 10 to 15 years for robbery, to run consecutively to the first two counts. Defendant timely appealed. His brief before this court contains 13 assignments of error. We affirm.

The record shows the following: On June 19, 1989, Campbell, born April 12, 1969, met Melissa Kinnear, a mature-looking 14-year-old girl. At the time Kinnear was staying with a 25-year-old woman, Joella Spencer, who was dating a friend of the defendant's. Spencer testified that she was under the belief that Kinnear was 18 years old and that she had known Kinnear to drive an automobile and to purchase liquor with false identification. Kinnear testified that shortly after she met the defendant, they had a long conversation during which she told him her actual age.

Kinnear testified that she began dating the defendant about 2 weeks after they first met and that they had consensual sexual intercourse several times over the next few weeks. Kinnear had previously dated a 23-year-old man before she began seeing the defendant.

On July 6, 1989, Kinnear's stepmother, Mary Vassar, was robbed. Kinnear testified that she, the defendant, and a friend named Earl Campbell (apparently not related to defendant) committed the robbery. Kinnear testified that under the plan devised by the parties, she was to go in and make conversation with her stepmother, and then a few minutes later the others were to enter. Kinnear said that on their way to her stepmother's house, the defendant had broken off a stick, which he told Earl Campbell to wrap in a towel so that it looked like a handgun.

Vassar testified that a few minutes after she let Kinnear into the house, Earl Campbell entered and put the cloth-covered stick, which she thought was a gun, to her head. At the time, Vassar was breast-feeding her infant child (Kinnear's half

brother). Earl Campbell called Vassar vulgar names and forced her into a bedroom and demanded her money. Kinnear testified that Vassar's purse was taken and that defendant left Vassar's home with the purse and a radio. All three parties then fled. Vassar testified that she saw only one man at the time of the robbery, but that it was possible that another could have entered. She testified that she had seen Kinnear in the neighborhood with two young men a few hours earlier that day.

Kinnear testified that after they removed money and some food stamps, the defendant threw the purse into a nearby garbage can. She witnessed the defendant ask two women on a porch if they wanted to buy any food stamps, and saw him enter their home when they agreed to do so. She testified that he told her that he received $50 in cash for 100 dollars' worth of the stolen food stamps.

On July 10, 1989, Vassar returned home to discover that her home had been broken into and more items had been stolen. She saw that a window screen had been removed and that she was missing a television, a microwave oven, a telephone, a camera, clothing, and jewelry. A neighbor testified that the previous evening he had observed Kinnear and two men walking up the street. One of the men was carrying a television on his back, and the other was carrying a couple of filled garbage bags.

Kinnear testified that before the burglary just described, she, the defendant, and another friend, Todd Williams, decided to see what other items of value they could steal from the Vassar home. She testified that she waited in the car and did not see the two men enter the home, but that the defendant later told her that he kicked in the window screen to gain entry. She testified that the defendant left the house with the television and a bag full of other items and that Williams took the microwave and another bag. Kinnear testified that she carried a bag as well. She said that the bags contained jewelry, clothes, and a telephone. She testified that the three of them then traveled a few blocks to a place where they sold the microwave.

A few days later, July 14, 1989, the defendant and Kinnear again returned to the Vassar home, this time accompanied by Tyrone Gresham. Kinnear testified that they wanted a car to

drive around and that she remembered Vassar's Fairmont could be started without a key. She and Gresham both testified that Gresham wrapped his sweater around a rock, and he testified that the defendant then hurled the rock through the window so that they could unlock the car. Gresham testified that they intended to drive the car until it ran out of gas. They then drove to Spencer's home, according to Kinnear, to get some "tapes" to play in the car's stereo. The car would not start again after the ignition was shut off, however, so the two men pushed the car around the corner and abandoned it.

At the close of the State's case, defendant moved that the count for theft by unlawful taking be dismissed because both Kinnear and Gresham testified that there was no intent to permanently deprive the owner of the vehicle of possession of the car. The court reserved ruling until the close of defendant's case, and then dismissed that count pursuant to the motion. The court denied certain jury instructions and certain other motions by the defendant before submission of the case to the jury. The jury returned guilty verdicts on the other three counts.

Defendant filed a motion for new trial, based in part on a handwritten letter allegedly authored by Kinnear. The letter was received by the judge on March 9, 1990. A similar letter was mailed to defendant's mother on March 12, 1990. The letters stated that Kinnear wanted to tell the truth that defendant had not committed the crimes, so that he would not be "put away." Kinnear testified at the hearing on the motion that she did not write the letters and that she had told the truth at trial. The court denied the motion and refused defendant's motion to have an independent handwriting analysis of the letter.

Appellant assigns 13 errors in his appeal. Two of them concern defenses available to a defendant over 19 years old charged with sexual assault of a victim less than 16. The first is that the trial court erroneously refused to allow the defense of defendant's reasonable mistake as to the age of the victim of the "statutory rape" charge. The related assignment is that the court erred in rejecting a "proffered jury instruction for active concealment or misrepresentation to the charge of Statutory Rape."

Section 28-319(1)(c) states: "Any person who subjects

another person to sexual penetration and . . . the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree."

This court has held that consent or reasonable mistake as to the age of the victim is not a defense to first degree sexual assault on a child. *State v. Navarrete*, 221 Neb. 171, 376 N.W.2d 8 (1985). We, like most American jurisdictions, have expressly rejected the "California Rule," allowing a defense of reasonable mistake. *Id.*

Neither does the statute exculpate a perpetrator where the victim has engaged in "active concealment or misrepresentation" of age. Absent such a provision, we do not read it into the statute. We have stated:

> "It is not violative of due process for the Legislature, in framing its criminal laws, to cast upon the public the duty of care or extreme caution. Nor is it unfair to require one who gets perilously close to an area of proscribed conduct to take the risk that he may cross over the line."

*State v. Navarrete, supra* at 175, 376 N.W.2d at 11.

It is not unreasonable to require that a person about to engage in sexual penetration take into account the possibility of misrepresentation of the age of a prospective partner. The trial court did not err in refusing to give an exculpatory jury instruction on that basis.

It should also be noted that Kinnear testified that she told the defendant that she was 14. The defendant did not testify at trial or offer any evidence at trial to contradict that testimony, and the jury could reasonably have accepted her testimony as fact.

Defendant also assigns as error the court's refusal "to allow the Defendant the opportunity to present evidence and limit questions of the prior sexual history of the 'victim.' " Section 28-319(1)(c) includes no requirement of chastity or lack of consent. In a charge of sexual assault on a child, evidence on the issue of the child's chastity is irrelevant and inadmissible. Plaintiff's argument on this issue is without merit, and the trial court did not err in this regard.

Defendant then asserts that "[t]he trial Court erred in allowing the endorsement of [a] witness on the day of trial as clear harm was shown to the Defendant's position." One of the

State's witnesses was Gresham. The court allowed Gresham to be endorsed as a witness on the day of trial. Defendant was certainly aware of the witness because he had subpoenaed Gresham. The court allowed a recess, for "however long it takes," so that defendant's counsel could interview Gresham before he took the stand for the State. At no time did defendant request a continuance.

This court has held that to obtain a reversal on the ground of endorsement of an additional witness, the defendant must have requested a continuance at trial. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990); *State v. Ellis*, 223 Neb. 779, 393 N.W.2d 719 (1986). No continuance was requested in this case. The assignment is without merit.

Defendant next contends that "the trial Court erred by allowing the testimony of Tyrome Gesham [sic] and failing to instruct the jury to disregard his testimony when the only competent evidence of the witness related to the dismissed charge." It first should be noted that Gresham testified not only to the dismissed charge, but that he observed the defendant laughing while the defendant and Kinnear discussed a past burglary. More importantly, however, despite his objection to Gresham's endorsement, defendant failed to object to Gresham's testimony, and thoroughly cross-examined the witness. Defendant did not move to strike any of Gresham's testimony. One who fails to object to or move to strike testimony may not predicate error on its admission. *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988); *Pauley Lumber Co. v. City of Nebraska City*, 190 Neb. 94, 206 N.W.2d 326 (1973). Defendant cannot complain that the court should not have allowed Gresham to testify, on the basis that his testimony was relevant only to the dismissed charge, when it was not until after Gresham testified that defendant moved to dismiss the charge of theft by unlawful taking.

In addition, defendant did not move that the jury be instructed to disregard Gresham's testimony, nor did defendant ever offer any instruction in that regard.

> A party who desires an instruction on some particular question should request it. When the general charge fairly

presents the case to the jury, error cannot be predicated on a failure to instruct on some particular phase of the case unless a proper instruction has been requested by the party complaining.

*State v. Lynch*, 196 Neb. 372, 376-77, 243 N.W.2d 62, 65-66 (1976). See, also, *State v. Huffman*, 222 Neb. 512, 385 N.W.2d 85 (1986). This assignment is without merit.

Defendant next contends that "the trial Court erred in failing to dismiss the charge of auto theft at the commencement of the trial." Defendant made no pretrial motion to dismiss the charge. It was only after the testimony of Kinnear and Gresham on the stand that it appeared that the parties may have been merely joyriding in the vehicle of the victim from whom they had twice previously stolen. This assignment is frivolous.

The next error assigned by defendant is that "the trial Court erred by failing to provide a fair trial to the Defendant, by not controlling or admonishing the actions of the prosecutor in intimidating the State's main witness." Defendant called Dorothy Brummet, a paralegal in the office of defendant's attorney, to testify on defendant's behalf. Brummet testified that Kinnear told her shortly before defendant's preliminary hearing that defendant was not guilty and that she did not want to testify against him. Brummet testified that sometime following that encounter, while sitting in the courtroom waiting for defendant's preliminary hearing, she heard loud voices coming from a side room. Brummet testified that Kinnear emerged from the room and appeared shaken and that Kinnear then proceeded to testify against defendant at the hearing.

At trial Kinnear was cross-examined with regard to the veracity of her statements at the preliminary hearing. She testified that she had told the truth and that any previous inconsistent statements she had made were due to her desire to protect the defendant.

There was no evidence that the judge at the preliminary hearing was even aware of the alleged intimidation, and thus it cannot be said that the trial court erred in failing to control or admonish the prosecutor. The question as to whether there was any impropriety on the part of the prosecutor was a question of fact. Defendant was allowed to bring evidence of the alleged

intimidation before the jury at trial, and the jury was able to take that evidence into account when considering the weight and credibility to be attributed to Kinnear's testimony. The jury nonetheless found that the evidence was sufficient to find defendant guilty beyond a reasonable doubt. The trial court did not err in this regard.

Defendant's next assignment of error maintains that as a matter of law, "the judgment and verdict of the jury was not supported by sufficient evidence." It is true that the State's case depends heavily upon the testimony of Kinnear, who admitted that she had made prior inconsistent statements. However, although prior contradictory statements may cause the jury to doubt the account of facts testified to at trial, generally such prior statements do not negate, erase, or eradicate the evidence that a certain fact exists. *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986). This court has long held that a defendant's conviction may be based on uncorroborated testimony of an accomplice. In *State v. Loveless*, 234 Neb. 463, 467, 451 N.W.2d 692, 694 (1990), we said:

> Loveless acknowledges the longstanding Nebraska rule that a defendant's conviction of a crime may be based on uncorroborated testimony of an accomplice. *State v. Burchett*, 224 Neb. 444, 399 N.W.2d 258 (1986); *State v. Huffman*, 222 Neb. 512, 385 N.W.2d 85 (1986); *Bartlett v. State*, 115 Neb. 148, 211 N.W. 994 (1927). We affirm the foregoing rule concerning an accomplice's testimony.

We note that the crimes of sexual assault and burglary are corroborated by testimony of various witnesses, including Vassar, Gresham, Kinnear, and Al Grill, a neighbor of Vassar's. It is only as to the charge of robbery that defendant contends the evidence is insufficient because it is uncorroborated. Defendant's contention is that "Ms. Kinnear's testimony [is] so inconsistent and unbelievable, that alone, without corroboration, should not as a matter of law be sufficient for conviction of robbery." Brief for appellant at 43. To so hold would violate our longstanding rule that credibility of witnesses is for the jury.

To aid the jury in making its determinations of the credibility of Kinnear and of the sufficiency of the evidence, the trial court

fully and properly instructed the jury in the manner approved in *State v. Loveless, supra*, as follows:

> The State has adduced testimony from claimed accomplices. Their testimony should be closely scrutinized for any possible motives for falsification, and if you find that they have testified falsely in regard to any material matter, you should be hesitant to convict upon their testimony without corroboration, and in no case should you convict the defendant unless you are satisfied of his guilt from the evidence beyond a reasonable doubt.

The jury found the evidence sufficient to convict defendant beyond a reasonable doubt of all three counts. In determining the sufficiency of the evidence to sustain a conviction, the Supreme Court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Grell*, 233 Neb. 314, 444 N.W.2d 911 (1989); *State v. Botts*, 232 Neb. 802, 442 N.W.2d 384 (1989). Taking the view most favorable to the State, there is sufficient evidence to support defendant's convictions. Defendant's assignment of error in this regard is without merit.

Defendant's next assignment of error is that "the dismissal and refiling of criminal charges should not extend the Statutory period for speedy trial." This issue was not argued in the lower court. This court will not consider an issue raised for the first time in this court. *State v. West*, 238 Neb. 939, 473 N.W.2d 81 (1991).

The next two assignments by the defendant allege that "the trial Court erred in refusing to grant the Defendant's Motion for a new trial based on the letter reported to be written by the State's main witness" and that "the trial Court erred in denying defense motion for independent handwriting analysis of the letter reported to be written by the State's main witness." We have held that a motion for new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *Waite v. A. S.*

*Battiato Co.*, 238 Neb. 151, 469 N.W.2d 766 (1991); *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991). Applications for new trial are to be entertained with reluctance and granted with caution. *Waite, supra.* Sitting as the sole judge of the credibility of the witness and the relevance of the newly discovered evidence, the trial judge obviously found the letter to be forged. The judge heard Kinnear's testimony to that effect, and he compared the letter to other statements in evidence which were handwritten by Kinnear. There was no error in the court's denying the motion for new trial, or in the court's refusal to allow defendant the opportunity to present a handwriting expert to assist the court in its determination.

Defendant next assigns as error the trial court's refusal to suppress a statement he made after his arrest. In response to an officer's comment that Kinnear might be pregnant, defendant allegedly said, "Yeah, I know." After a hearing on the matter pursuant to a pretrial motion, the court found that the statement "was volunteered during the first interview during the time the defendant was being advised of his constitutional rights." Officer Robert Mjeldheim testified at trial that defendant made the statement to him. Defendant failed to renew his objection. A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *State v. Cogswell*, 237 Neb. 769, 467 N.W.2d 680 (1991).

Defendant's final assignment of error claims that the sentence imposed on the defendant for robbery was excessive. Defendant was sentenced to 10 to 15 years on the robbery charge. This sentence was within the statutory limits. A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Lixey,* 238 Neb. 540, 471 N.W.2d 444 (1991). In addition, this was a particularly offensive series of crimes. The small group of young hoodlums robbed a mother nursing her infant child, and then returned a few days later to finish the job and inflict further financial damage on a decent citizen. This defendant was an integral part of the group. Given defendant's criminal record and the seriousness of the offense,

the trial court did not abuse its discretion.

The jury's verdicts and the sentences of the trial court are affirmed.

AFFIRMED.